UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETER KLEIDMAN,<br><br>                                    Plaintiff,<br><br>v.<br><br>JUSTICE MARTIN N. BUCHANAN; JUSTICE JOSE S. CASTILLO; JUSTICE RICHARD D. HUFFMAN; and CHIEF JUDGE MARY H. MURGUIA,<br><br>                                    Defendants. | Case No.: 23-cv-1251-WQH-JLB<br><br>**ORDER** |

HAYES, Judge:

The matters before the Court are (1) the Motion to Dismiss First Amended Complaint filed by Defendants Justices Martin N. Buchanan, Jose S. Castillo, and Richard D. Huffman (collectively, the "Justice Defendants") (ECF No. 17) and (2) the Motion to Dismiss Plaintiff's First Amended Complaint filed by Defendant Chief Judge Mary H. Murguia ("Chief Judge Murguia") (ECF No. 23).

## I.    BACKGROUND

On July 6, 2023, Plaintiff Peter Kleidman ("Plaintiff"), proceeding pro se, initiated this action by filing a Complaint against the Justice Defendants, alleging claims for violations of his due process and equal protection rights. (ECF No. 1.)

On November 3, 2023, the Justice Defendants filed a motion to dismiss. (ECF No. 10.) On July 8, 2024, the Court granted the motion to dismiss and dismissed the Complaint without prejudice and with leave to amend. (ECF No. 14 at 14–15.)

On July 29, 2024, Plaintiff filed the operative First Amended Complaint ("FAC"). (ECF No. 15, FAC.) In addition to Plaintiff's previously asserted claim against the Justice Defendants for violation of due process, the FAC reframed Plaintiff's equal protection claim against the Justice Defendants as a second claim for violation of due process. (*Compare* ECF No. 1 ¶¶ 16–21, *with* FAC ¶¶ 25–33.) The FAC also added a third claim for violations of Plaintiff's due process and equal protection rights against "the California judiciary," which Plaintiff asserts against the Justice Defendants "because they are in privity with the California judiciary." (FAC ¶ 34.) Finally, the FAC added a claim for violations of Plaintiff's due process rights against a new defendant, Chief Judge Murguia, "in her official capacity as the Chief Judge of the Ninth Circuit US Court of Appeals." *Id.* ¶¶ 1, 43–51.

On August 12, 2024, the Justice Defendants filed their Motion to Dismiss First Amended Complaint. (ECF No. 17.)

On September 9, 2024, Plaintiff filed a Response in Opposition to the Justice Defendants' Motion to Dismiss First Amended Complaint (ECF No. 18), as well as an Amended Response in Opposition (ECF No. 19).[1] The same day, Plaintiff filed a Notice of Errata in First Amended Complaint, which contained revisions to paragraphs 18–19, 24, 29, 33, and 42 of the FAC. (ECF No. 20.)

On September 16, 2024, the Justice Defendants filed a Reply in support of their Motion to Dismiss First Amended Complaint. (ECF No. 21.)

---

[1] Plaintiff explained that, although his initial Response in Opposition was "substantively complete," the Amended Response would contain "the proper Table of Contents and Table of Authorities." (ECF No. 18 at 1 & n.1.)

On December 19, 2024, Chief Judge Murguia filed her Motion to Dismiss Plaintiff's First Amended Complaint. (ECF No. 23.)

On January 13, 2025, Plaintiff filed a Response in Opposition to Chief Judge Murguia's Motion to Dismiss Plaintiff's First Amended Complaint. (ECF No. 24.)

On January 17, 2025, Chief Judge Murguia filed a Reply in support of her Motion to Dismiss Plaintiff's First Amended Complaint. (ECF No. 25.)

## II.    ALLEGATIONS IN THE FIRST AMENDED COMPLAINT

### A.    Allegations Related to the Justice Defendants

Plaintiff initiated an action in the Superior Court of California, captioned "*Kleidman v. RFF Family Partnership LP*," where he sought money damages ("Action 1"). (FAC ¶ 4.) The Superior Court dismissed Plaintiff's complaint. *Id.* ¶ 5. Plaintiff appealed the dismissal in the California Court of Appeal for the Second Appellate District, case number B260735. *Id.* The Second District Court of Appeal Administrative Presiding Justice ("AJP") dismissed the appeal on the grounds that the appeal was untimely. *Id.* ¶ 6.

Plaintiff filed a subsequent lawsuit in the Superior Court of California against the Second District Court of Appeal and the APJ, captioned "*Kleidman v. California Court of Appeal Second Appellate District*" ("Action 2"). *Id.* ¶ 7. In Action 2, Plaintiff alleged that the APJ "had no judicial power to singlehandedly dismiss B260735" because, under the California Constitution and Government Code, the Second District Court of Appeal "is organized into eight divisions … and no justice in [the Second District Court of Appeal] can exert judicial power except as a member of one of these Eight Divisions." *Id.* The APJ had "acted independently of the Eight Divisions, and therefore his act of dismissing B260735 was altogether void for want of judicial power." *Id.* Plaintiff also alleged in Action 2 that "under the California Constitution, no justice has the judicial power to *singlehandedly* dismiss an appeal (against the will of the appellant), because such a dismissal requires the concurrence of two justices," but the APJ dismissed the action singlehandedly. *Id.* ¶ 8. Plaintiff had requested the Superior Court of California deem the dismissal of B260735 as void and that case B260735 be reopened, assigned to one of the

Eight Divisions, and that if determination of timeliness should be made, that it be made by the concurrence of two justices. *Id.* ¶ 9. Plaintiff "lost" Action 2 in the Superior Court. *Id.* ¶ 10. Plaintiff appealed, "giving rise to three appellate cases in [the California Court of Appeal for the Fourth Appellate District], Nos. D079855, D079856, D079933." *Id.* "These appeals were deemed to be a single appeal" (collectively, "the Appeal"). *Id.*

The Justice Defendants in the present case presided over the Appeal, rendering an opinion on June 23, 2023 (the "6/23/2023 Opinion"). *Id.* The Justice Defendants raised "new arguments and issues for the first time in the 6/23/2023 Opinion, *sua sponte*, without giving Kleidman the opportunity to be heard." *Id.* ¶ 11. The Justice Defendants ignored Plaintiff's arguments "advanced in his briefing in support of the Appeal." *Id.* ¶ 12. The 6/23/2023 Opinion "was adjudicated in a manner that violated [Plaintiff's] right to due process, because [the Justice Defendants] raised new arguments without giving [Plaintiff] the opportunity to be heard, and ignored [Plaintiff's] arguments." *Id.* ¶ 15. "[Plaintiff's] injury is not the 6/23/23 Opinion itself, but that it was rendered in a manner which violated [Plaintiff's] due process rights." *Id.* ¶ 21. "In this action, [Plaintiff] is not looking for a different result in the Appeal, but rather he is looking solely for due process in the Appeal's proceedings." *Id.* "[Plaintiff] seeks prospective relief because the purpose of this action is to reopen the Appeal for future proceedings, whereby the Appeal is adjudicated in a manner which complies with due process in the future." *Id.* ¶ 22. The Justice Defendants "persist in depriving [Plaintiff] of a fair trial. The [Justice Defendants] have, and continue to have, the power to hold a fair trial, but they refuse to hold one." *Id.* ¶ 23. "By refusing, and continuing to refuse, to reopen the proceedings so that a fair trial may be had, they unconstitutionally deprive, and continue to deprive, [Plaintiff] of the fair trial he deserves but has never had." *Id.*

Plaintiff's "due process rights" were also "violated in the decisionmaking [sic] process in the Appeal's proceedings" by the Justice Defendants "opt[ing] to keep the 6/23/23 Opinion unpublished, i.e., non-precedential and outside the body of California's common law." *Id.* ¶ 28. Plaintiff "request[s] that this Court adjudge that the Justice

[Defendants'] manner of deciding the Appeal, whereby they chose to keep their decision unpublished and thereby excluded from California common law, was unconstitutional (because the Justices were less incentivized to get it right)." *Id.* ¶ 30.

The California Judiciary deprived Plaintiff "of equal protection and due process because B260735 was dismissed as untimely by a single justice." *Id.* ¶ 37. "The decision to dismiss B260735 as untimely was more error-prone because the decision was not adjudicated by a three-justice panel with the concurrence of two," and "[s]ince the decision was more error-prone, it was determined in violation of [Plaintiff's] due process rights." *Id.* B260735 "was dismissed in violation of equal protection because other appeals are dismissed by a three-justice panel with the concurrence of two, whereas the APJ arbitrarily decided that B260735 should be decided by a single justice." *Id.* Plaintiff asserts this claim against the Justice Defendants because "they are in privity with the California judiciary." *Id.* ¶ 34. "If this Court finds insufficient privity, then [Plaintiff] requests leave to amend so as to sue the California Chief Justice, in her capacity as the Chair of the Judicial Council responsible for overseeing the procedural rules and practices followed by the California judiciary." *Id.*

Plaintiff seeks reopening of the Appeal to allow him to be "duly heard on the new arguments and issues raised by the [Justice Defendants], and whereby the [Justice Defendants] duly consider the arguments that [Plaintiff] had made which they had previously ignored." *Id.* ¶ 13. Specifically, as to Count One, Plaintiff seeks a "declaration that the manner in which the 6/23/23 Opinion was rendered violated [Plaintiff's] right to due process." *Id.* ¶ 51, i. Plaintiff also seeks a "declaration that the Appeal should be reopened so that [Plaintiff] may have the fair trial that he deserves but has never had." *Id.* ¶ 51, ii.

As to Count Two, Plaintiff seeks a "declaration that the practice of issuing appellate decisions which are not part of California's common law violates due process." *Id.* ¶ 51, iii. Plaintiff also seeks a "declaration that the Appeal should be reopened so that it is

re-decided with a published opinion which is part of California's common law." *Id.* ¶ 51, iv.

As to Count Three, Plaintiff seeks a "declaration that the system and practice, whereby some appeals are dismissed as untimely by a single justice, whereas other appeals are dismissed as untimely by a three-justice panel with the concurrence of two, violates due process and equal protection." *Id.* ¶ 51, v. Plaintiff further seeks a "declaration that B260735 should be reopened so that the timeliness of the appeal is decided by a three-justice panel with the concurrence of two." *Id.* ¶ 51, vi.

Plaintiff seeks additional remedies of costs and other such relief the Court deems just and proper. *Id.* ¶¶ 51, x–xi.

## B.    Allegations Related to Chief Judge Murguia

"It is almost certain that this case will be appealed," and "[Plaintiff] intends to appeal if he loses in this Court." *Id.* ¶ 44. Plaintiff therefore asserts "a pre-enforcement constitutional challenge to the Ninth Circuit's rules and practices," including the Rule of Interpanel Accord, the practice of issuing non-precedential decisions, and the "practice of disposing of cases with perfunctory decisions." *Id.* ¶¶ 44–45. With respect to this claim, Chief Judge Murguia "is sued solely in her executive capacity as the person who oversees the Ninth Circuit's enforcement of the rules which the Ninth Circuit promulgates and who oversees the practices which it employs." *Id.* ¶ 1.

The Rule of Interpanel Accord "is unconstitutional because it forces a three-judge panel to mindlessly, blindly follow prior three-judge panels['] decisions in the Ninth Circuit." *Id.* ¶ 45. Additionally, "the practice of issuing non-precedential decisions" "violates due process because it increases the risk of error among the decisions without precedential value." *Id.* ¶ 48. Lastly, the "practice of disposing of cases with perfunctory decisions (memoranda and orders) violates due process and implied rights under [Federal Rule of Appellate Procedure ('FRAP')] 40." *Id.* ¶ 50.

Plaintiff seeks declarations that: "the [Rule of Interpanel Accord] is unconstitutional"; "the practice of issuing non-precedential decisions is unconstitutional";

and "the practice of issuing decisions which do not adequately state the facts and do not adequately address the losing party's arguments violates due process and parties' rights under FRAP 40." *Id.* ¶¶ 51, vii–ix.

Plaintiff seeks additional remedies of costs and other such relief the Court deems just and proper. *Id.* ¶¶ 51, x–xi.

## III.    MOTIONS TO DISMISS

### A.    Contentions

#### 1.    The Justice Defendants

The Justice Defendants move to dismiss the claims against them in the FAC on the following grounds: (1) Plaintiff's claims are barred by the Justice Defendants' Eleventh Amendment sovereign immunity and the *Ex parte Young* exception does not apply because the Justice Defendants are state court judges and Plaintiff continues to seek retrospective relief; (2) Plaintiff's claims are barred by the *Rooker-Feldman* doctrine because Plaintiff's claims are a de facto appeal of a state court decision; and (3) Plaintiff fails to state claims for violations of the due process and equal protection clauses.[2] The Justice Defendants also contend that Count Three fails because the Justice Defendants, as justices of the Fourth Appellate District, did not participate in the dismissal of B260735, which was dismissed by the Second Appellate District.

Plaintiff contends that his claims against the Justice Defendants are not barred by the Eleventh Amendment because the *Ex parte Young* doctrine applies to this case in that claims for prospective relief are permitted. Plaintiff contends that his general constitutional challenges seek prospective relief. Plaintiff contends that the relief he requests in connection with the state court decisions is also prospective because he seeks "relief which affects the future conduct of [the Justice] Defendants" where they are required "to provide [Plaintiff] with the fair trial that he never had." (ECF No. 19 at 10.) Plaintiff contends that

---

[2] *See Ex Parte Young*, 209 U.S. 123 (1908); *Rooker v. Fid. Tr. Co.*, 263 U.S. 413 (1923); *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983).

his claims against the Justice Defendants are not barred by *Rooker-Feldman* for the following reasons: because his injury was being deprived of due process and equal protection, Plaintiff is not seeking review of the 6/23/2023 Opinion or the decision to have B260735 dismissed by a single justice; the state court proceedings had not ended prior to his filing of this action; the state court did not adjudicate whether his due process and equal protection rights were violated; Plaintiff is not alleging as a legal wrong an erroneous decision by the state court; the Justice Defendants' initial determination that the 6/23/2023 Opinion be unpublished and the Second District Court of Appeal's decision to have B260735 dismissed by a single justice are not "judgments," but rather decisions "made in an executive, quasi-attorney general capacity"; and *Rooker-Feldman* is inapplicable to general constitutional challenges. Plaintiff contends that he adequately alleges claims for violation of due process and equal protection.

As for Count Three, Plaintiff concedes that this claim should be dismissed as to the Justice Defendants but contends that he should receive leave to amend so he may "proceed against the appropriate defendants." *Id.* at 25–26. Plaintiff contends the Eleventh Amendment and the *Rooker-Feldman* doctrine would not bar Count Three, as amended, for the reasons discussed above.

### 2.    Chief Judge Murguia

Chief Judge Murguia contends that Plaintiff's claim against her must be dismissed for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) on the following grounds: (1) Plaintiff's claim is barred by the doctrine of sovereign immunity and (2) Plaintiff lacks standing because any alleged harm Plaintiff might suffer as a result of the challenged Ninth Circuit rule and practices is purely speculative.

Plaintiff contends that his claim against Chief Judge Murguia is not barred by sovereign immunity because he seeks to enjoin her from "enforcing unconstitutional rules and practices in the Ninth Circuit." (ECF No. 24 at 3.) Plaintiff contends that he has standing to assert his claim against Chief Judge Murguia because this Court must accept as true Plaintiff's allegation in the FAC that, should Plaintiff lose in this Court, he intends

to appeal this Court's decision to the Ninth Circuit. Alternatively, Plaintiff requests that the Court should either permit Plaintiff to amend the FAC to allege that the Justice Defendants will appeal this Court's decision to the Ninth Circuit or permit Plaintiff to engage in jurisdictional discovery as to the standing issue. Plaintiff contends that he has alleged more than the mere existence of the challenged rules and practices, as Ninth Circuit statistics support the probability that his hypothetical appeal will be decided by a non-precedential decision using a "perfunctory memorandum or order." *Id.* at 7. With respect to his challenge to the Rule of Interpanel Accord, Plaintiff requests leave to amend to allege why there is a significant risk that the Rule will be applied adversely to him in a hypothetical appeal of this Court's anticipated decision.

### B.    Legal Standards

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a defendant to move for dismissal on grounds that the court lacks jurisdiction over the subject matter. Fed. R. Civ. P. 12(b)(1). When a Rule 12(b)(1) motion is brought, the "party asserting federal subject matter jurisdiction bears the burden of proving its existence." *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In order to state a claim for relief, a pleading "must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* 8(a)(2). Dismissal under Rule 12(b)(6) is "proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citation omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id.* (citation omitted). However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration in original) (quoting Fed. R. Civ. P. 8(a)). A court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (citation omitted).

An Eleventh Amendment immunity defense is "quasi-jurisdictional" in nature and "may be raised in either a Rule 12(b)(1) or 12(b)(6) motion." *Sato v. Orange Cnty. Dep't of Educ.*, 861 F.3d 923, 927 n.2 (9th Cir. 2017); *compare Savage v. Glendale Union High Sch. Dist. No. 205*, 343 F.3d 1036, 1040 (9th Cir. 2003) (treating Eleventh Amendment immunity as a matter of subject matter jurisdiction), *with Elwood v. Drescher*, 456 F.3d 943, 949 (9th Cir. 2006) ("'[D]ismissal based on Eleventh Amendment immunity is not a dismissal for lack of subject matter jurisdiction,' but instead rests on an affirmative defense." (quoting *Miles v. California*, 320 F.3d 986, 988–89 (9th Cir. 2003))). Where a defendant raises an Eleventh Amendment challenge based on the face of the complaint, it makes no difference whether the court examines immunity under Rule 12(b)(1) or Rule 12(b)(6) because the standards are materially the same. The court assumes that all factual allegations in the complaint are true and draws all reasonable inferences in the plaintiff's favor. *See Syed v. M-I, LLC*, 853 F.3d 492, 499 n.4 (9th Cir. 2017) (discussing Rule 12(b)(6) standard); *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004) (discussing Rule 12(b)(1) standard), *overruled on other grounds*, *Munoz v. Superior Ct. of L.A. Cnty.*, 91 F.4th 977 (9th Cir. 2024); *Warren v. Fox Fam. Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (explaining that "[w]here jurisdiction is intertwined with the merits, we must

'assume[ ] the truth of the allegations ....'" (quoting *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987))).

### C.     Discussion

#### 1.     The Justice Defendants

##### a.     Eleventh Amendment Immunity

The Justice Defendants move to dismiss the claims against them in the FAC on the ground that Plaintiff's claims are barred by Eleventh Amendment sovereign immunity because the Justice Defendants are state court judges and the exception in *Ex parte Young* does not apply as Plaintiff is not seeking prospective equitable relief. Plaintiff contends that the *Ex parte Young* exception applies to the claims against the Justice Defendants in the FAC because he is seeking prospective relief in the form of "declaratory relief whereby the Appeal is reopened so that he may have a fair trial in the future" (ECF No. 19 at 8), and "a remedy whereby B260735 is reopened so that, prospectively, a new adjudication occurs by a three-justice panel with the concurrence of two," *id.* at 27. Plaintiff contends that his "injury is ongoing because to this very day he has been, and continues to be, deprived of the fair trial which he deserves under the Constitution." *Id.* at 10. Plaintiff contends that his general constitutional challenges seek "only prospective relief to ensure the challenged rule[s] will not be enforced in the future." *Id.* at 21–22.

The Eleventh Amendment of the United States Constitution provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by citizens or subjects of any foreign State." U.S. Const. amend. XI. The Eleventh Amendment presupposes that "each State is a sovereign entity in our federal system" and that "'[i]t is inherent in the nature of sovereignty not to be amenable to the suit of an individual without [the sovereign's] consent.'" *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996) (first alteration in original) (quoting *Hans v. Louisiana*, 134 U.S. 1, 13 (1890)). The Eleventh Amendment "enacts a sovereign immunity from suit," and it shields a state except "where there has been 'a surrender of this immunity....'" *Idaho v. Coeur*

*d'Alene Tribe of Idaho*, 521 U.S. 261, 267 (1997) (quoting *Principality of Monaco v. Mississippi*, 292 U.S. 313, 322–23 (1934)). Eleventh Amendment immunity shields a state from suits brought by the state's own citizens as well as in suits invoking federal question jurisdiction. *Id.* at 268.

"State immunity extends to state agencies and to state officers, who act on behalf of the state and can therefore assert the state's sovereign immunity." *NRDC v. Cal. Dep't of Transp.*, 96 F.3d 420, 421 (9th Cir. 1996) (citing *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 142–46 (1993); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984)). A state official "sued in his official capacity has the same immunity as the state, and is entitled to [E]leventh [A]mendment immunity." *Pena v. Gardner*, 976 F.2d 469, 473 (9th Cir. 1992) (citing *Hafer v. Melo*, 502 U.S. 21, 25–26, (1991)); *see also Simmons v. Sacramento Cnty. Superior Ct.*, 318 F.3d 1156, 1161 (9th Cir. 2003) ("Plaintiff cannot state a claim against the Sacramento County Superior Court (or its employees), because such suits are barred by the Eleventh Amendment.").

There are three exceptions to the general rule that states, state agencies, and state officers are protected by the Eleventh Amendment from suits brought by citizens in federal court. *Douglas v. Cal. Dep't of Youth Auth.*, 271 F.3d 812, 817 (9th Cir. 2001), *amended*, 285 F.3d 1226 (9th Cir. 2001).

> First, a state may waive its Eleventh Amendment defense. Second, Congress may abrogate the States' sovereign immunity by acting pursuant to a grant of constitutional authority. Third, under the *Ex parte Young* doctrine, the Eleventh Amendment does not bar a "suit against a state official when that suit seeks ... prospective injunctive relief."

*Id.* at 817–18 (internal citations omitted) (quoting *Seminole Tribe of Fla.*, 517 U.S. at 73).

In this case, the Justice Defendants are judicial officers, and all the challenged actions were undertaken in their official capacities. *See Munoz*, 91 F.4th at 980 ("Judge Taylor also has Eleventh Amendment immunity as a state judge."). Thus, the claims against

the Justice Defendants are barred by the Eleventh Amendment, absent an applicable exception.[3]

Plaintiff contends that Eleventh Amendment immunity does not apply to suits for prospective relief. The *Ex parte Young* doctrine provides that the Eleventh Amendment "does not [ ] bar actions for prospective declaratory or injunctive relief against state officers in their official capacities for their alleged violations of federal law." *Coal. to Def. Affirmative Action v. Brown*, 674 F.3d 1128, 1134 (9th Cir. 2012); *see Ex parte Young*, 209 U.S. at 155–56. The *Ex parte Young* doctrine is available "where 'a plaintiff alleges an ongoing violation of federal law, and where the relief sought is prospective rather than retrospective.'" *Doe v. Lawrence Livermore Nat'l Lab'y*, 131 F.3d 836, 839 (9th Cir. 1997) (quoting *Coeur d'Alene Tribe of Idaho*, 521 U.S. at 294 (O'Connor, J., concurring)). "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (alteration in original) (quoting *Coeur d'Alene Tribe of Idaho*, 521 U.S. at 296 (O'Connor, J., concurring)). When determining whether the relief sought is prospective or retrospective, courts must "look to the substance rather than to the form of the relief sought." *Papasan v. Allain*, 478 U.S. 265, 279 (1986).

The FAC attempts to recast the relief that Plaintiff seeks with respect to reopening the Appeal and B260735 as prospective. (*See, e.g.*, FAC ¶ 22 ("[Plaintiff] seeks prospective relief because the purpose of this action is to reopen the Appeal for future proceedings, whereby the Appeal is adjudicated in a manner which complies with due process in the future."); *id.* ¶ 40 ("[Plaintiff] seeks prospective relief because he seeks to reopen B260735

---

[3] Plaintiff contends that *Munoz* "should not be taken as binding precedent to the effect that every state judge always has Eleventh Amendment immunity in every circumstance." (ECF No. 19 at 12.) The Court does not so hold, as evidenced by the Court's consideration of the *Ex parte Young* exception below.

for future proceedings, whereby the timeliness of the appeal is determined, in the future, by a three-justice panel with the concurrence of two.").) The Justice Defendants contend that the FAC's reframing "is merely a newly worded attempt to invalidate the state court Decision." (ECF No. 17 at 14.) The Court agrees with the Justice Defendants. While Plaintiff alleges that the relief he seeks is prospective, the substance of the relief he seeks is retrospective. Plaintiff seeks "a declaratory judgment declaring the 6/23/23 Opinion void for being constitutionally infirm" and a declaration "that the Appeal should be reopened so that [Plaintiff] may have the fair trial that he deserves." (FAC ¶¶ 13, 51, ii.) He further seeks declarations that "the Appeal should be reopened so that it is re-decided with a published opinion" and that "B260735 should be reopened so that the timeliness of the appeal is decided by a three-justice panel with the concurrence of two." *Id.* ¶¶ 51, iv, vi. As the Justice Defendants point out, it would be impossible to "reopen" the Appeal and B260735 without first invalidating the state court decisions, as any "'new' appeal would simply be dismissed by the Court of Appeal as already decided." (ECF No. 21 at 7.) The FAC's requests to reopen the Appeal and B260735 thus seek inherently retrospective relief, rendering these claims ineligible for the *Ex parte Young* exception to Eleventh Amendment immunity.[4]

The FAC also alleges that the Justice Defendants are "engag[ing] in an ongoing violation of federal law because they have refused, and continued to refuse, to allow [Plaintiff] to have a fair trial." (FAC ¶ 23.) If the FAC's allegations of an "ongoing violation" could invoke the *Ex parte Young* exception, every litigant who wished to "reopen" a state court's decision could evade the Eleventh Amendment's immunity bar by claiming to experience an "ongoing" injury from the state court's "continued" refusal to

---

[4] The Court recognizes that, as Plaintiff contends, "[t]he fact that [a plaintiff's] claims depend *in part* upon past conduct … is not dispositive." (ECF No. 19 at 8 (emphasis added) (quoting *Cardenas v. Anzai*, 311 F.3d 929, 938 (9th Cir. 2002)).) In this case, however, Plaintiff's claims related to reopening his state court cases rest entirely upon the Justice Defendants' past conduct in deciding the Appeal (as well as the Second District Court of Appeal's past conduct in disposing of B260735). Unlike the plaintiffs in *Cardenas*, the FAC does not "seek to remedy an ongoing violation of federal law." 311 F.3d at 938.

1    allow him to relitigate. Such a broad reading of the *Ex parte Young* exception would

2    swallow the rule. Here, any purported wrongdoing on the Justice Defendants' part occurred

3    in the context of deciding the Appeal and B260735. Both proceedings are concluded. As

4    such, the FAC does not sufficiently allege an "ongoing" or "continuing" violation with

5    respect to the Appeal or B260735.[5]

6            Plaintiff also contends that the Justice Defendants are not entitled to Eleventh

7    Amendment sovereign immunity because they acted "in their executive, enforcement

8    capacities as quasi-attorney generals of the State" "when deciding to keep their opinion [in

9    the Appeal] non-precedential (unpublished)." (ECF No. 19 at 20–21.) The Justice

10   Defendants contend that "judges' decisions on whether to publish their rulings fall within

11   their adjudicative duties." (ECF No. 21 at 9.) Notably, even if the Justice Defendants were

12   acting in some official capacity other than their judicial roles, Eleventh Amendment

13   sovereign immunity extends not only to judges, but also to any state official "sued in his

14   official capacity." *Pena*, 976 F.2d at 473; *see, e.g.*, *Bolbol v. Brown*, 120 F. Supp. 3d 1010,

15   1017 (N.D. Cal. 2015) ("Eleventh Amendment sovereign immunity applies to plaintiffs'

---

17   [5] Plaintiff's reliance on *Los Angeles County Bar Association v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992),
18   does not establish that his claims against the Justice Defendants are premised upon an ongoing violation.
     Plaintiff cites *Los Angeles County Bar Association* for the proposition that "[d]eclaratory relief against a
19   state official may not be premised on a wholly past violation of federal law, because such relief … would
     be useful only as a basis for a damages award …." (ECF No. 19 at 8 (quoting *L.A. Cnty. Bar Ass'n*, 979
20   F.2d at 704).) Plaintiff contends that "[t]he logical equivalent of this statement is that when a claim for
     declaratory relief *is* useful *without* the need for damages, then it is *not* premised on a wholly past
21   violation." *Id.* Plaintiff appears to believe that because the equitable relief he seeks "is useful without the
     need for damages," it is necessarily prospective in nature. *See id.* In this instance, Plaintiff's willingness
22   to forgo seeking damages cannot alone entitle him to application of the *Ex parte Young* exception. Indeed,
     equitable relief, like the relief sought in the FAC with respect to reopening the Appeal and B260735, can
23   be retrospective. Retrospective equitable relief is not available under *Ex parte Young*. *See Edelman v.
     Jordan*, 415 U.S. 651, 667 (1974) ("[E]quitable relief may be barred by the Eleventh Amendment."); *see
24   also Williams v. Or. Dep't of Corr.*, 542 F. App'x 602, 603 (9th Cir. 2013) ("To whatever extent the
     defendants were sued in their official capacities for money damages or retrospective equitable relief,
25   Eleventh Amendment immunity bars those claims."); *Alvarado v. Recksiek*, No. ED CV 15-2654 FMO
     (AS), 2016 WL 1090609, at *3 n.5 (C.D. Cal. Mar. 21, 2016) ("[T]he Eleventh Amendment bars Plaintiff's
26   [section] 1983 claims for damages and retrospective declaratory relief against [the defendant] in her
     official capacity." (citing *Dittman v. California*, 191 F.3d 1020, 2026 (9th Cir. 1999); *Green v. Mansour*,
27   474 U.S. 64, 73–74 (1985))).

28

federal claims against the Governor and Attorney General of California."). Here, the decision of whether to publish their opinion in the Appeal is a decision the Justice Defendants made in their "official capacity," which results in sovereign immunity. Furthermore, regardless of which "capacity" the Justice Defendants were acting in, Plaintiff unquestionably seeks retrospective relief with respect to his request for a declaration "that the Appeal should be reopened so that it is re-decided with a published opinion." (FAC ¶ 51, iv.)

Based upon the allegations in the FAC, Plaintiff's claims seeking to "reopen" the Appeal and B260735 do not "allege[] an ongoing violation of federal law and seek[] relief properly characterized as prospective.'" *Verizon Md.*, 535 U.S. at 645. The Court finds that, based on the allegations of the FAC, the *Ex parte Young* exception to Eleventh Amendment immunity does not apply and Plaintiff's claims against the Justice Defendants in the FAC are accordingly barred to the extent he seeks to challenge "the manner in which the 6/23/23 Opinion was rendered" and "reopen" the Appeal or B260735.[6] (*See* FAC ¶¶ 51, i–ii, iv, vi.)

Plaintiff also asserts general constitutional challenges to California court rules and practices. *See id.* ¶ 51, iii (seeking "[a] declaration that the practice of issuing appellate decisions which are not part of California's common law violates due process"); *id.* ¶ 51, v (seeking "[a] declaration that the system and practice, whereby some appeals are dismissed as untimely by a single justice, whereas other appeals are dismissed as untimely

---

[6] As the Court previously determined (*see* ECF No. 14 at 9 n.2), the cases Plaintiff cites in support (*see* ECF No. 19 at 8–10) of his contention that reopening the state court cases would afford him prospective relief are dissimilar to the case before the Court. *See Lawrence Livermore Nat'l Lab'y*, 131 F.3d at 839 (discussing whether the plaintiff sought prospective injunctive relief in a reinstatement of employment context); *Flint v. Dennison*, 488 F.3d 816, 825 (9th Cir. 2007) (addressing, in a student records context, that "the injunctions Flint seeks as related to past violations serve to expunge from University records the 2003 censure and 2004 denial of his Senate seat, which actions may cause Flint harm"); *Hason v. Med. Bd. of Cal.*, 279 F.3d 1167, 1171 (9th Cir. 2002) (holding in the context of medical licensure, "Dr. Hason's complaint clearly seeks prospective injunctive relief to enjoin the individual defendants' refusal to issue Dr. Hason a medical license").

by a three-justice panel with the concurrence of two, violates due process and equal protection"). The Court agrees with Plaintiff that, to the extent the FAC broadly seeks to invalidate these California appellate court practices independent of "reopening" the Appeal or B260735, the relief Plaintiff seeks is prospective. *See Kleidman v. Willhite*, No. 2:20-cv-02365-PSG-JDE, 2020 WL 5823278, at *13 (C.D. Cal. Aug. 20, 2020) ("The Court agrees with Plaintiff, however, that the *Ex Parte Young* exception would apply to his general constitutional challenges seeking prospective relief.… however, as noted, [Plaintiff] lacks standing to pursue these claims."), *adopted by* No. 2:20-cv-02365-PSG-JDE, 2020 WL 5824163 (C.D. Cal. Sept. 29, 2020), *aff'd as modified sub nom. Kleidman v. Cal. Ct. of App. for the Second App. Dist.*, No. 20-56256, 2022 WL 1153932 (9th Cir. Apr. 19, 2022) (affirming the district court's dismissal for lack of subject matter jurisdiction, but instructing the district court "to amend the judgment to reflect that the dismissal of the federal claims is without prejudice").

The *Ex parte Young* exception to Eleventh Amendment immunity is accordingly applicable to Plaintiff's claims against the Justice Defendants solely to the extent he asserts general constitutional challenges seeking prospective relief. (*See* FAC ¶¶ 51, iii, v.) Nevertheless, as the Court concludes below, Plaintiff lacks standing to assert these claims. *See infra* at 25–27.

### b. *Rooker-Feldman* Doctrine

The Justice Defendants additionally move to dismiss the claims against them in the FAC on the ground that Plaintiff's claims for due process and equal protection are barred by the *Rooker-Feldman* doctrine because the claims are "de facto appeal[s]" of the Justice Defendants' 6/23/2023 Opinion and the dismissal of B260735, and the relief sought would require this Court to adjudicate issues that are "inextricably intertwined" with those in the 6/23/2023 Opinion. (ECF No. 17 at 15, 16 n.5.)

Plaintiff contends that his claims are not barred by the *Rooker-Feldman* doctrine because he "does not allege as a legal wrong an erroneous decision [by the state court]. Rather, the alleged legal wrong is [the Justice Defendants'] violation of his due process in

the course of adjudicating the Appeal." (ECF No. 19 at 12–13.) Plaintiff contends that the state court did not adjudicate whether his due process and equal protection rights were violated. Plaintiff contends that he is not asking the Court to review or reject the 6/23/2023 Opinion; rather, "[t]he only question before this Court is whether [Plaintiff] was afforded a fair trial in the state-court appellate proceedings." *Id.* at 13. Plaintiff contends that he is not asking the Court to review the decision to have B260735 dismissed by a single justice because he does not ask the Court "to find that any rulings in B260735 are erroneous." *Id.* at 28. Plaintiff contends that the state court action had not ended when he filed the present action as is required under the *Rooker-Feldman* doctrine. Plaintiff contends that the Justice Defendants' initial determination that the 6/23/2023 Opinion be unpublished and the Second District Court of Appeal's decision to have B260735 dismissed by a single justice are not "judgments" barred by the *Rooker-Feldman* doctrine. Plaintiff contends that the *Rooker-Feldman* doctrine is inapplicable to his general constitutional challenges.

The *Rooker*-*Feldman* doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). "The doctrine holds that 'a federal district court does not have subject matter jurisdiction to hear a direct appeal from the final judgment of a state court.'" *Gouveia v. Espinda*, 926 F.3d 1102, 1107 (9th Cir. 2019) (quoting *Noel v. Hall*, 341 F.3d 1148, 1154 (9th Cir. 2003)).

The *Rooker-Feldman* doctrine applies where a federal court action functions as a "de facto appeal" of a state court action, *Noel*, 341 F.3d at 1158, and the district court is "in essence being called upon to review the state court decision." *Reusser v. Wachovia Bank, N.A.*, 525 F.3d 855, 859 (9th Cir. 2008) (quoting *Feldman*, 460 U.S. at 482 n.16). "To determine whether an action functions as a de facto appeal, [courts] 'pay close attention to the *relief* sought by the federal-court plaintiff.'" *Cooper v. Ramos*, 704 F.3d 772, 777–78 (9th Cir. 2012) (quoting *Bianchi v. Rylaarsdam*, 334 F.3d 895, 900 (9th Cir. 2003)). "[T]he

clearest case for dismissal based on the *Rooker-Feldman* doctrine occurs when a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision." *Reusser*, 525 F.3d at 859 (quoting *Henrichs v. Valley View Dev.*, 474 F.3d 609, 613 (9th Cir. 2007)). In *Noel v. Hall*, the Ninth Circuit provided a test to determine whether the doctrine applies: "If a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision, *Rooker-Feldman* bars subject matter jurisdiction in federal district court." 341 F.3d at 1164.

Here, the FAC alleges due process violations as a result of the 6/23/2023 Opinion and due process and equal protection violations as a result of the dismissal of B260735 by a single justice. The FAC seeks declaratory relief that "reopen[s]" both the Appeal and B260735, as well as declarations that the Appeal should be "re-decided with a published opinion" and that B260735 should be "decided by a three-justice panel with the concurrence of two." (FAC ¶¶ 51, ii, iv, vi.) Plaintiff alleges in the FAC that his injury is the 6/23/2023 Opinion—in which the Justice Defendants raised a new argument, did not consider an argument Plaintiff raised in his opening brief, and decided that the opinion would be unpublished, *id.* ¶¶ 11–12, 28—and the dismissal of B260735 by a single justice of the Second District Court of Appeal, rather than by a three-justice panel with the concurrence of two, *id.* ¶ 37. Based upon the allegations in the FAC, Plaintiff alleges that his injuries resulted from legal errors by the Justice Defendants (and the Second District Court of Appeal). *See, e.g.*, *id.* ¶ 51, i (praying for relief as to "Count 1," "[a] declaration that the manner in which the 6/23/23 Opinion was rendered violated [Plaintiff's] right to due process"); *id.* ¶ 37 ("[Plaintiff] has been deprived of equal protection and due process because B260735 was dismissed as untimely by a single justice."). Plaintiff is seeking as his remedy relief from the 6/23/2023 Opinion and the dismissal of B260735. Although Plaintiff contends that his claims are not a de facto appeal and thus not barred by the *Rooker-Feldman* doctrine, the FAC challenges these state court decisions and seeks relief

that would require them to be vacated or voided.[7] Again, it would be impossible to "reopen" the Appeal and B260735 to afford Plaintiff the relief he seeks without first invalidating the state court decisions.

Additionally, Plaintiff's claims are inextricably intertwined with the issues in the de facto appeal because this Court would have to find that the Justice Defendants (and the APJ in the Second District Court of Appeal) erred in order for Plaintiff to prevail. *See Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1142 (9th Cir. 2004) ("The federal plaintiff is also barred from litigating, in a suit that contains a forbidden de facto appeal, any issues that are 'inextricably intertwined' with issues in that de facto appeal."); *Doe & Assocs. L. Offs. v. Napolitano*, 252 F.3d 1026, 1030 (9th Cir. 2001) ("Where the district court must hold that the state court was wrong in order to find in favor of the plaintiff, the issues presented to both courts are inextricably intertwined."). Plaintiff's requests for relief related to the Appeal and B260735 fall squarely within the *Rooker-Feldman* prohibition. *See Kougasian*, 359 F.3d at 1140 ("*Rooker-Feldman* thus applies only when the federal plaintiff both asserts as her injury legal error or errors by the state court and seeks as her remedy relief from the state court judgment."); *see also Marciano v. White*, 431 F. App'x 611, 612 (9th Cir. 2011) (approving dismissal under the *Rooker-Feldman* doctrine because "Marciano claims that Judge White's decisions defaulting him and awarding damages against him caused him injury by violating his constitutional rights, and he seeks injunctive relief overturning those decisions").

With respect to Plaintiff's contention that the Justice Defendants' initial determination not to publish the 6/23/2023 Opinion is not a "judgment" subject to the

---

[7] As the Court previously noted, Plaintiff's contention that he is not seeking review or rejection of the 6/23/2023 Opinion or this Court's determination that the state court's decision was erroneous (*see* ECF No. 19 at 13, 23) is in contradiction with the relief sought in the FAC. (*See* FAC ¶ 14 (seeking a remedy of a "declaratory judgment declaring the 6/23/23 Opinion void for being constitutionally infirm, and declaring the Appeal reopened for future proceedings"); *id.* ¶ 38 (seeking a remedy "whereby B260735 is reopened so that the question of timeliness can be determined by a three-justice panel with the concurrence of two").)

*Rooker-Feldman* doctrine, district courts within the Ninth Circuit have held that challenges to a state court decision not to publish an opinion are barred by *Rooker-Feldman*. *See Rygg v. Hulbert*, No. C11-1827JLR, 2012 WL 12847290, at *8 (W.D. Wash. July 16, 2012) (concluding that the plaintiffs' allegations "that the creation of unpublished decisions [was] unconstitutional," which were based upon "the Court of Appeals' decision not to publish the opinions in Plaintiffs' cases," were "barred by *Rooker-Feldman* because the alleged injuries stem from allegedly erroneous state court decisions"), *aff'd*, 611 F. App'x 900 (9th Cir. 2015); *Hild v. Cal. Sup. Ct.*, No. C 07-5107 TEH, 2008 WL 544469, at *8 (N.D. Cal. Feb. 26, 2008) (determining that the plaintiff's claim that the California Court of Appeal "intentionally misapplied the criteria for certifying an opinion for publication" was "an argument that the Court of Appeal acted improperly in Plaintiff's state court case" and thus "barred by *Rooker-Feldman*").

Plaintiff's related contention that the *Rooker-Feldman* doctrine is inapplicable to "the decision to have B260735 determined by a single justice" because it "is not a judicial judgment or order, but rather a decision made in an executive, quasi-attorney general capacity" (ECF No. 19 at 28) is devoid of support. Plaintiff cites *Verizon Md.*, 535 U.S. at 644 n.3, for the proposition that "*Rooker-Feldman* is inapplicable to administrative and/or executive decisions." (ECF No. 19 at 23, 28.) The footnote Plaintiff cites, however, merely states that *Rooker-Feldman* "has no application to judicial review of executive action, including determinations made by a *state administrative agency*." *Verizon Md.*, 535 U.S. at 644 n.3 (emphasis added). *Verizon Md.* did not discuss the possibility of judges acting in anything other than a judicial capacity, much less in a "quasi-attorney general capacity." The Court rejects Plaintiff's contention that this Court's review of the state court's "decision to have B260735 determined by a single justice" is exempt from the *Rooker-Feldman* doctrine.[8]

---

[8] The other cases Plaintiff cites are similarly unconvincing as to this issue. As the Justice Defendants point out, *Grant v. Johnson*, 15 F.3d 146, 148 (9th Cir. 1994), explicitly held that a state court judge "acted in

1    As to Plaintiff's timing argument, the Court of Appeal docket reflects that the state

2    court issued the final decision on June 23, 2023, which was prior to the filing of the present

3    case in federal court.[9] Plaintiff contends that the state court decision had not ended prior to

4    the filing of the Complaint because Plaintiff had not filed his petition for rehearing or

5    petition for review in the California Supreme Court. The Court does not find that this

6    argument is sufficient for the Court to conclude the *Rooker-Feldman* doctrine is

7    inapplicable. *See Marciano*, 431 F. App'x at 613 ("Marciano has argued that

8    *Rooker-Feldman* cannot apply because there has not been a final state court decision in his

9    case. Marciano points to pending state court appeals, which he argues must be concluded

10   before *Rooker-Feldman* can apply. We disagree. The fact that Marciano filed his federal

11   suit before his state court appeals have concluded cannot be enough to open the door for a

12   federal district court to review the state court decisions. To hold otherwise would run

13   counter to the doctrine's underlying principle that review of state court decisions must

14   proceed through the state appellate procedure and then to the United States Supreme

15   Court…. That the California Supreme Court has not yet resolved Marciano's claim does

16   not mean Marciano can redirect that review so that it will be conducted by a federal district

17   court."); *Worldwide Church of God v. McNair*, 805 F.2d 888, 893 n.3 (9th Cir. 1986) ("We

---

18

19

20   an adjudicative capacity" when appointing a guardian. (*See* ECF No. 21 at 9 n.1.) Additionally, in

21   *Georgevich v. Strauss*, 772 F.2d 1078, 1087–88 (3d Cir. 1985), the United States Court of Appeals for the
     Third Circuit concluded that state court judges were the proper defendants in a case challenging state

22   parole procedures because the judges were not "sued in their judicial capacity as neutral adjudicators of
     disputes," but rather "as enforcers of the statutes" and "administrators of the parole power." *Georgevich*

23   did not, however, address the *Rooker-Feldman* doctrine, and it is unclear how *Georgevich*'s discussion of
     judges' "parole power" relates to the case at bar, which challenges the Second District Court of Appeal's

24   dismissal of the B260735 appeal, an inherently judicial action taken in a judicial capacity as the "neutral
     adjudicator" of a dispute. *Id.* at 1087.

25
     [9] The Court previously granted (*see* ECF No. 14 at 12 n.4) the Justice Defendants' request to take judicial

26   notice of the Appeal docket (ECF No. 10-1 at 97–104). As to the other facts and documents the Justice
     Defendants request judicial notice of (ECF No. 17-1 at 2–4), these requests are denied because the Court

27   need not consider them in ruling on the pending Motion to Dismiss First Amended Complaint. *See Asvesta
     v. Petroutsas*, 580 F.3d 1000, 1010 n.12 (9th Cir. 2009) (denying request for judicial notice where judicial

28   notice would be "unnecessary").

agree with the Second and Fifth Circuits that the *Feldman* doctrine should apply to state judgments even though state court appeals are not final."); *Eicherly v. O'Leary*, 721 F. App'x 625, 627 (9th Cir. 2018) ("[W]e are satisfied that the state court decisions at issue in this case are sufficiently final for *Rooker-Feldman* purposes. The purpose of the *Rooker-Feldman* doctrine is to ensure that review of state court decisions proceeds through the state appellate process and then, if necessary, to the Supreme Court of the United States."); *see also Spindler v. City of Los Angeles*, No. CV 17-250-JLS(E), 2018 WL 6164796, at *12 (C.D. Cal. Oct. 2, 2018) (collecting Ninth Circuit cases finding that the *Rooker-Feldman* doctrine still applies despite pending appeals).[10]

As to Plaintiff's contention that *Rooker-Feldman* does not apply because the state court has not adjudicated or considered whether Plaintiff was afforded process, the Ninth Circuit addressed this issue in *Bianchi*, 334 F.3d at 895.[11] The court found that the plaintiff's "claims would still be barred under *Rooker-Feldman* even if the state court had not actually decided his constitutional claims." *Id.* at 900. The court stated that "[t]he *Rooker-Feldman* doctrine does not require us to determine whether or not the state court fully and fairly adjudicated the constitutional claim." *Id.* Elaborating on the distinction, the court provided that "unlike res judicata, the *Rooker-Feldman* doctrine is not limited to

---

[10] To the extent Plaintiff also intends to apply this timing argument to his claims relating to B260735, this argument is belied by the allegations in the FAC and likewise fails. Because the FAC alleges that the Appeal challenged the dismissal of the B260735 proceeding, the B260735 proceeding was necessarily concluded prior to the filing of the Appeal, and, consequently, prior to the filing of the present case.

Moreover, while Plaintiff contends that *Exxon Mobil Corp.*, 544 U.S. at 280, and *Mothershed v. Justs. of Sup. Ct.*, 410 F.3d 602 (9th Cir. 2005), suggest that a state court proceeding has only "ended" when it is resolved by the state's highest court (*see* ECF No. 19 at 15), the Ninth Circuit explicitly rejected such an argument in *Marciano. See Marciano*, 431 F. App'x at 613 (stating that the plaintiff-appellant's reliance on *Exxon* and *Mothershed* to challenge the finality requirement was "unconvincing").

[11] Plaintiff contends that *Bianchi* was "overruled" by the Supreme Court's decision in *Exxon Mobil Corp.* in 2005. (ECF No. 19 at 17.) However, the Ninth Circuit has continued to rely upon the holding from *Bianchi* that Plaintiff challenges. *See, e.g.*, *Hooper v. Brnovich*, 56 F.4th 619, 626 (9th Cir. 2022) (holding that the *Rooker-Feldman* doctrine barred federal courts from "adjudicating [the plaintiff-appellant's] procedural due process claim"). Plaintiff also contends that the Ninth Circuit "wrongly decided" *Bianchi*. (ECF No. 19 at 16–18.) This Court, however, is bound by Ninth Circuit authority.

claims that were actually decided by the state courts, but rather it precludes review of all state court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional." *Id.* at 901 (quotation and citation omitted). "Stated plainly, *Rooker-Feldman* bars any suit that seeks to disrupt or undo a prior state-court judgment, regardless of whether the state-court proceeding afforded the federal-court plaintiff a full and fair opportunity to litigate her claims." *Id.* (quotation and citation omitted). Pursuant to Ninth Circuit authority, Plaintiff's claims are still barred under *Rooker-Feldman* even if the state court did not consider Plaintiff's due process and equal protection claims.

Accordingly, Plaintiff's claims against the Justice Defendants that challenge "the manner in which the 6/23/23 Opinion was rendered" and seek to "reopen" the Appeal and B260735 are barred by the *Rooker-Feldman* doctrine, and the Court lacks subject matter jurisdiction over these claims. (*See* FAC ¶¶ 51, i–ii, iv, vi.)

However, the Court agrees with Plaintiff that the FAC's general constitutional challenges to California court "system[s] and practice[s]" are not barred by *Rooker-Feldman* because they do not require the Court to review a judicial decision in a particular case. *See id.* ¶ 51, iii (seeking "[a] declaration that the practice of issuing appellate decisions which are not part of California's common law violates due process"); *id.* ¶ 51, v (seeking "[a] declaration that the system and practice, whereby some appeals are dismissed as untimely by a single justice, whereas other appeals are dismissed as untimely by a three-justice panel with the concurrence of two, violates due process and equal protection"); *see also Kleidman v. RFF Fam. P'ship, LP*, No. 2:22-cv-03947-SPG-AFM, 2023 WL 4495237, at *4 (C.D. Cal. Jan. 11, 2023) (concluding that the *Rooker-Feldman* doctrine would not bar similar general constitutional challenges), *aff'd*, No. 23-55610, 2024 WL 3963837 (9th Cir. Aug. 28, 2024). As discussed below, however, Plaintiff lacks standing to assert such claims. *See infra* at 25–27.

/ / /

/ / /

### c.    Article Three Standing

The Article III standing doctrine limits federal court jurisdiction. *See La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1087 (9th Cir. 2010). "[T]he 'irreducible constitutional minimum' of standing consists of three elements." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). In order to satisfy Article III's standing requirements, a plaintiff must show "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citing *Lujan*, 504 U.S. at 560–61). Where a plaintiff seeks declaratory relief, the plaintiff must show not only that he "has suffered or is threatened with a concrete and particularized legal harm," but also that there is "a sufficient likelihood that he will again be wronged in a similar way." *Meinecke v. City of Seattle*, 99 F.4th 514, 520 (9th Cir. 2024) (citation omitted). "[A]llegations of possible future injury are not sufficient." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)). The party invoking federal jurisdiction bears the burden of establishing that the standing requirements of Article III are satisfied. *TransUnion LLC*, 594 U.S. at 430–31. Although the Justice Defendants do not challenge Plaintiff's Article III standing in their Motion to Dismiss First Amended Complaint, the Court can—and must—raise this issue *sua sponte* because it relates to the Court's subject-matter jurisdiction.[12] *R.R. 1900, LLC v. City of Sacramento*, 604 F. Supp. 3d 968, 973 n.2 (E.D. Cal. 2022) ("Although the question of standing is not expressly raised in the [defendant's] motion to dismiss, standing is essential to the existence of subject matter jurisdiction, an issue which may be raised sua sponte." (citing Fed. R. Civ. P. 12(h)(3); *Snell v. Cleveland,*

---

[12] The Justice Defendants' Reply brief raises the issue of standing, but only in the context of contending that the Court should not grant Plaintiff leave to amend to substitute the Chief Justice of the California Supreme Court as a defendant with respect to Count Three. (*See* ECF No. 21 at 17–18.)

*Inc.*, 316 F.3d 822, 826 (9th Cir. 2002))); *see Bernhardt v. County of Los Angeles*, 279 F.3d 862, 868 (9th Cir. 2002) ("The district court had both the power and the duty to raise the adequacy of [the plaintiff's] standing sua sponte.").

The Court specifically considers Plaintiff's standing to bring the general constitutional challenges that the FAC asserts against the Justice Defendants. (*See* FAC ¶ 51, iii (seeking "[a] declaration that the practice of issuing appellate decisions which are not part of California's common law violates due process"); *id.* ¶ 51, v (seeking "[a] declaration that the system and practice, whereby some appeals are dismissed as untimely by a single justice, whereas other appeals are dismissed as untimely by a three-justice panel with the concurrence of two, violates due process and equal protection").) Here, as discussed above, the *Rooker-Feldman* doctrine bars Plaintiff from "reopening" the Appeal or B260735. Because the Appeal and B260735 cannot be reopened by this Court in this case, Plaintiff's "only interest" in his "general constitutional challenge[s]" "is prospective and hypothetical in nature." *Bianchi*, 334 F.3d at 900 n.3 (quoting *Facio v. Jones*, 929 F.2d 541, 543 (10th Cir. 1991)). Plaintiff cannot rely solely on prospective and hypothetical relief to establish standing. *See Meinecke*, 99 F.4th at 520; *Davidson*, 889 F.3d at 967. In other words, Plaintiff's general constitutional challenges are "inextricably intertwined" with the relief he seeks with respect to the Appeal and B260735. *Rooker-Feldman*'s bar against "reopening" the Appeal or B260735 renders the injuries Plaintiff allegedly suffered as a result of the challenged rules or practices unable to "be redressed by judicial relief." *TransUnion LLC*, 594 U.S. at 423. Plaintiff thus lacks Article III standing to assert his general constitutional challenges because "his situation is indistinguishable from anyone else, without any palpable chance of being subjected to the [California courts' practices] in the future, who might desire to challenge the [practices]." *Willhite*, 2020 WL 5823278, at *11.

Notably, on multiple occasions, the United States District Court for the Central District of California has applied this same logic to reject Plaintiff's similar general challenges to California statutes and court rules for lack of standing. *See, e.g.*, *RFF Fam.*

*P'ship, LP*, 2023 WL 4495237, at *5 ("[B]ecause *Rooker-Feldman* precludes Plaintiff from seeking a declaratory judgment invalidating the Vexatious Litigant Order, Plaintiff may not 'seek a declaratory judgment invalidating the state court rule on which the state court decision relied, for [P]laintiff's "request for declaratory relief [is] inextricably intertwined with his request to [reopen] the state court's judgment...."' Plaintiff lacks Article III standing to seek a declaratory judgment declaring the Vexatious Litigant Statute unconstitutional." (quoting *Noel*, 341 F.3d at 1158)); *Willhite*, 2020 WL 5823278, at *10 ("Plaintiff's claims seeking a declaratory judgment invalidating the [California Supreme Court's "Great Public Importance Rule"] and Cal. R. Ct. 8.1115(a) are inextricably intertwined with his request to vacate and set aside the state court judgments. Though framed in the SAC as general constitutional challenges, only if his state court judgments are set aside will he have standing to assert these constitutional challenges.... Plaintiff lacks standing to assert these general constitutional challenges.").

In sum, the FAC fails to allege "an injury in fact" that "would likely be redressed by judicial relief" with respect to the FAC's general constitutional challenges that are alleged against the Justice Defendants. Plaintiff thus lacks Article III standing to assert his general constitutional challenges to the California appellate courts' practice of issuing unpublished appellate decisions or of single-justice dismissals of untimely appeals. (*See* FAC ¶¶ 51, iii, v.) Accordingly, these claims must be dismissed for lack of subject-matter jurisdiction, leaving no viable claims remaining against the Justice Defendants. The Justice Defendants' Motion to Dismiss First Amended Complaint is granted.[13]

### 2.    Chief Judge Murguia

Chief Judge Murguia moves to dismiss the claim against her in the FAC on the ground that Plaintiff lacks standing to assert such a claim. She contends Plaintiff "has failed to allege a concrete injury in fact arising from either of the Ninth Circuit Rules he seeks to

---

[13] The Court need not reach the remainder of the Justice Defendants' arguments raised in the Motion to Dismiss First Amended Complaint given the Court's findings above.

challenge." (ECF No. 23 at 4.) Chief Judge Murguia contends Plaintiff's challenge of Ninth Circuit rules and practices relies upon an assumption that a theoretical chain of events will occur—specifically, "this Court must … conclude that any decision issued by the Ninth Circuit on a hypothetical future appeal would hypothetically be incorrect and that the Supreme Court would deny further review." *Id.* at 5.

Plaintiff contends that he has standing to assert his claim against Chief Judge Murguia because this Court must accept as true Plaintiff's allegation in the FAC that, should Plaintiff lose in this Court, he intends to appeal this Court's decision to the Ninth Circuit. Alternatively, Plaintiff requests that, in order to establish standing, the Court should either permit Plaintiff to amend the FAC to allege that the Justice Defendants will appeal this Court's decision to the Ninth Circuit or permit Plaintiff to engage in jurisdictional discovery as to the standing issue. Plaintiff contends that he has alleged more than the mere existence of the challenged rules and practices, as Ninth Circuit statistics support the probability that his hypothetical appeal will be decided by a non-precedential decision reflected in a "perfunctory memorandum or order." (ECF No. 24 at 7.) With respect to his challenge to the Rule of Interpanel Accord, Plaintiff requests leave to amend to allege why there is a significant risk that the rule will be applied adversely to him in a hypothetical appeal of this Court's anticipated decision.

As the Court stated above, in order to have standing, a plaintiff must show, among other things, "that he suffered an injury in fact that is concrete, particularized, and actual or imminent." *TransUnion LLC*, 594 U.S. at 423. While a threat of future harm can satisfy the injury-in-fact requirement, a plaintiff "must show that the threat of future injury is 'actual and imminent, not conjectural or hypothetical.'" *Bolden-Hardge v. Off. of Cal. State Controller*, 63 F.4th 1215, 1220 (9th Cir. 2023) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)).

The FAC alleges that Plaintiff "has standing to prosecute a pre-enforcement constitutional challenge to the Ninth Circuit's rules and practices" because "[i]t is almost certain that this case will be appealed" and "[Plaintiff] intends to appeal if he loses in this

Court." (FAC ¶ 44.) The FAC alleges "[t]here is a substantial probability (based on Ninth Circuit statistics) that this case will be decided [by the Ninth Circuit] with a non-precedential decision" and "a perfunctory memorandum or order, and so [Plaintiff] now has standing to challenge the validity of [these practices] as a pre-enforcement challenge." *Id.* ¶¶ 48, 51.

The FAC's claim against Chief Judge Murguia relies on mere statistical *probabilities*, rather than actual threats of future injury. This claim is based upon a series of presumptions: (1) a presumption that Plaintiff will lose the present case in this Court and file an appeal, (2) a presumption that the challenged Ninth Circuit rule and practices—the Rule of Interpanel Accord, the practice of issuing non-precedential decisions, and the "practice of disposing of cases with perfunctory decisions"—will be applied in a manner that is harmful to Plaintiff when the Ninth Circuit decides his hypothetical appeal, (3) a presumption that the Ninth Circuit would deny en banc review of the panel's hypothetical decision in Plaintiff's hypothetical appeal, and (4) a presumption that the Supreme Court would hypothetically deny Plaintiff's hypothetical petition for a writ of certiorari. Such a speculative sequence of hypothetical events cannot satisfy Plaintiff's burden of alleging that the threat of future injury from the Ninth Circuit rule and practices is "actual and imminent, not conjectural or hypothetical." *Bolden-Hardge*, 63 F.4th at 1220.[14]

---

[14] The cases Plaintiff cites in his Response in Opposition fail to persuade the Court otherwise. Although Plaintiff is correct that, when analyzing standing at the pleading stage, the Court must "accept as true all material allegations of the complaint and construe the complaint in favor of the complaining party," taking the allegations of the FAC as true does not negate the fact that the FAC relies upon a hypothetical sequence of events that is not sufficiently concrete to establish Plaintiff's standing. (*See* ECF No. 24 at 3–4 (citing *In re Silver Lake Grp., LLC Sec. Litig.*, 108 F.4th 1178, 1188 (9th Cir. 2024)).) Additionally, Plaintiff's "stated intent" to appeal to the Ninth Circuit if he loses in this Court does not alone establish a concrete threat of future injury from the Ninth Circuit rule and practices and is thus distinguishable from a plaintiff's "stated intent to cast ballots." *See id.* at 4 (citing *Townley v. Miller*, 722 F.3d 1128, 1134 (9th Cir. 2013)). Finally, the discussion of standing in the false advertising context in *Davidson*, 889 F.3d at 967–70, is inapposite. *Davidson* answered the narrow question of "to what extent a previously deceived consumer who brings a false advertising claim can allege that her inability to rely on the advertising in the future is an injury insufficient to grant her Article III standing to seek injunctive relief," *id.* at 967, which

The Court's reasoning is bolstered by other district courts' conclusions that Plaintiff lacked standing to assert similar preemptive challenges to the constitutionality of Ninth Circuit rules. *See, e.g.*, *Kleidman v. Lui*, No. 2:24-cv-02353-PA-JDE, 2024 WL 4338356, at *6 (C.D. Cal. Aug. 27, 2024) (concluding that Plaintiff lacked standing to assert his claim against Chief Judge Murguia challenging, inter alia, the Ninth Circuit's Rule of Interpanel Accord because Plaintiff's "speculat[ion] that this action will be decided on appeal and the Ninth Circuit 'will adhere' to the [Rule of Interpanel Accord]" is a "type of conjecture [that] does not satisfy Article III standing"), *adopted by* No. 2:24-cv-02353-PA-JDE, 2024 WL 4341543 (C.D. Cal. Sept. 26, 2024); *Kleidman v. Danner*, 743 F. Supp. 3d 1138, 1144 (N.D. Cal. 2024) (holding that the "connection between Mr. Kleidman's purported future injury and the Rule of Interpanel Accord is far too attenuated and speculative to establish his Article III standing to challenge that Rule"); *Willhite*, 2020 WL 5823278, at *11 ("The mere existence of [Ninth Circuit Rule 36-3], which may or may not be applied to Plaintiff in the future, is not sufficient to create a case or controversy within the meaning of Article III…. Plaintiff's alleged injury is entirely speculative, based on multiple levels of conjecture and hypothetical future events.").

Accordingly, the Court finds Plaintiff lacks Article III standing to contest the constitutionality of the Ninth Circuit rules and practices challenged in the FAC. The FAC's

---

is markedly distinct from the threat of future harm that Plaintiff attempts to establish through the hypothetical chain of events in the case at bar.

Plaintiff's request to conduct jurisdictional discovery "on the factual question of whether the Justices intend to appeal if they lose in this Court" is similarly unavailing. (ECF No. 24 at 5.) Plaintiff's very proposal for jurisdictional discovery relies on a conditional, hypothetical circumstance—"*if* [the Justice Defendants] lose in this Court." *Id.* (emphasis added). Even supposing that the Justice Defendants confirmed that they intend to appeal if they were to lose in this Court, answering that question alone would not obviate the remaining series of hypotheticals upon which Plaintiff bases his standing to assert this claim. The Court finds that, in the case at bar, conducting jurisdictional discovery would not aid Plaintiff in establishing Article III standing.

claim against Chief Judge Murguia must be dismissed for lack of subject-matter jurisdiction.[15]

## IV.    LEAVE TO AMEND

The Justice Defendants contend that the Court should deny Plaintiff leave to amend because Plaintiff previously received leave to amend, Plaintiff "failed to cure any of the deficiencies," and further attempts to amend would be futile and create undue delay and prejudice to the Justice Defendants. (ECF No. 17 at 21.) Plaintiff "requests leave to amend to name Chief Justice Guerrero as the defendant in Count 3." (ECF No. 19 at 26.) In their Reply brief, the Justice Defendants contend that permitting Plaintiff to amend Count Three to add Chief Justice Guerrero as a defendant would be futile because the claim would continue to be barred by Eleventh Amendment sovereign immunity and the *Rooker-Feldman* doctrine.

Chief Judge Murguia does not explicitly address whether the Court should grant Plaintiff leave to amend. (*See generally* ECF Nos. 23 & 25.) Plaintiff requests leave to amend his claim against Chief Judge Murguia "to better allege threatened harm." (ECF No. 24 at 5; *see also id.* at 6–8, 11.)

Federal Rule of Civil Procedure 15 mandates that the court should "freely give" leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). "This policy is to be applied with extreme liberality." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (quotation omitted). In determining whether to allow an amendment, a court considers whether there is "undue delay," "bad faith," "undue prejudice to the opposing party," or "futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). "[L]eave to amend need not be given if a complaint, as amended, is subject to dismissal." *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 538 (9th Cir. 1989). "[W]e have held that a district court does not abuse its discretion in denying a motion to amend where the movant

---

[15] The Court need not reach the remainder of Chief Judge Murguia's arguments raised in the Motion to Dismiss Plaintiff's First Amended Complaint in light of the Court's findings above.

presents no new facts but only new theories and provides no satisfactory explanation for his failure to fully develop his contentions originally." *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995); *see also Boehm v. Shemaria*, 478 F. App'x 457, 457 (9th Cir. 2012). When amendment would be futile, the district court need not grant leave to amend. *See Carrico v. City & County of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011); *Gompper v. VISX, Inc.*, 298 F.3d 893, 898 (9th Cir. 2002).

Here, it is apparent that granting leave to amend as to Plaintiff's claims against the Justice Defendants would be futile because Plaintiff cannot cure the Justice Defendants' Eleventh Amendment immunity, the applicability of the *Rooker-Feldman* doctrine, or his lack of standing. *See Steinmeyer v. Lab'y Corp. of Am. Holdings*, 676 F. Supp. 3d 851, 867 (S.D. Cal. 2023) (denying leave to amend because "no amendment can fix the fundamental defects that the Court lacks jurisdiction over Plaintiff's de facto appeal and that Judge Bubis is immune from suit for injunctive relief"); *DJ St. John v. Tatro*, No. 15-cv-2552-GPC-JLB, 2016 WL 1162678, at *10 (S.D. Cal. Mar. 23, 2016) (denying leave to amend due to incurable standing issues and the applicability of the *Rooker-Feldman* doctrine), *aff'd*, 698 F. App'x 917 (9th Cir. 2017).

Plaintiff's request to amend the FAC to name Chief Justice Guerrero as the defendant in Count Three does not alter the Court's analysis. Naming Chief Justice Guerrero as a defendant would not remedy the immunity, standing, and *Rooker-Feldman* issues that preclude the Court from exercising subject-matter jurisdiction over Count Three of the FAC. *Cf. Willhite*, 2020 WL 5823278, at *13 (recommending that leave to amend be denied because "even if the Court were to allow leave in order to name this additional defendant, this would not alter the analysis on standing"); *Matthews v. Foss*, No. 23-cv-02800 BLF (PR), 2024 WL 3678020, at *6 (N.D. Cal. Aug. 6, 2024) ("Because qualified immunity would apply to *any* prison officer that was involved in the underlying events, the Court will not grant leave to amend to attempt to name other defendants as such a claim would be futile."). For the reasons stated above, the Court dismisses the FAC without leave to amend as to the claims against the Justice Defendants.

Although Plaintiff has not previously amended the claim against Chief Judge Murguia, the Court has reviewed the amendments Plaintiff proposes in his Response in Opposition, which continue to impermissibly rely upon hypotheticals and conjectures that are insufficient to establish Plaintiff's standing to assert his claim against Chief Judge Murguia. (*See, e.g.*, ECF No. 24 at 6 (requesting leave to amend to allege "that the *probability* is upwards of 90% … that the upcoming appeal will be decided by a non-precedential decision" (emphasis added)); *id.* at 7 (requesting leave to amend to allege Plaintiff "will *likely lose if* the panel issues a perfunctory memorandum or perfunctory dispositive order" (emphasis added)); *id.* at 8–9 (requesting leave to amend to allege "why there is a *significant risk* that the [Rule of Interpanel Accord] will be applied adversely to [Plaintiff] in the *(likely)* upcoming appeal" (emphasis added)).) Because the Court finds that Plaintiff's proposed amendments would be futile, the Court dismisses the FAC without leave to amend as to the claim against Chief Judge Murguia. *See Lui*, 2024 WL 4338356, at *7 (concluding that leave to amend was not warranted because the "deficiencies are not the result of inartful pleading but are instead the result of legal deficiencies that cannot be cured by further amendment").

## V.    CONCLUSION

IT IS HEREBY ORDERED that the Justice Defendants' Motion to Dismiss First Amended Complaint (ECF No. 17) is granted. The FAC is dismissed as to the claims against the Justice Defendants without prejudice and without leave to amend.

IT IS FURTHER ORDERED that Chief Judge Murguia's Motion to Dismiss Plaintiff's First Amended Complaint (ECF No. 23) is granted. The FAC is dismissed as to the claim against Chief Judge Murguia without prejudice and without leave to amend. The Clerk of the Court shall close this case.

Dated:  March 10, 2025

Hon. William Q. Hayes
United States District Court